UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUMBERTO JIMENEZ-PEREZ,

                Petitioner,

     v.

PAMELA BONDI, et al.,

                Respondents.

CASE NO. C25-2631JLR

ORDER

## I.  INTRODUCTION

Before the court is Petitioner Humberto Jimenez-Perez's amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Am. Petition (Dkt. # 9); Traverse (Dkt. # 19).)  The Government[1] opposes the petition.  (Return (Dkt. # 14).)  The court has considered the parties' submissions, the relevant portions of the record, and the governing

---

[1] The Federal Respondents are United States Attorney General Pamela Bondi, United States Department of Homeland Security ("DHS") Secretary Kristi Noem, Acting Director for United States Immigration and Customs Enforcement ("ICE") Todd Lyons, Seattle Field Office Director Laura Hermosillo, and ICE (collectively, "the Government").  (*See* Am. Petition at 1.)

ORDER - 1

law.  Being fully advised, the court GRANTS Petitioner's amended petition for writ of habeas corpus and ORDERS the Government to release Petitioner from custody within 24 hours.

## II.  BACKGROUND

Petitioner is a 62-year-old native and citizen of Cuba who entered the United States as an asylee in 1980.  (Am. Petition ¶ 1; Reed Decl. (Dkt. # 16) ¶¶ 3-4.)  He was apprehended by ICE on June 10, 2025, shortly before his anticipated release on parole from criminal incarceration in California, and has been detained at the Northwest ICE Processing Center ("NWIPC") ever since.  (Am. Petition ¶¶ 3, 5, 8.)  Petitioner is detained pursuant to INA § 241, 8 U.S.C. § 1231.  (Reed Decl. ¶ 20.)

In November 1997, after Petitioner was convicted of several crimes in California, the Government revoked Petitioner's immigration parole, took him into custody, and served him with a Notice to Appear.  (*See* Reed Decl. ¶¶ 4-9.)  In February 1998, Petitioner was ordered removed from the United States to Switzerland or, if Switzerland would not accept him, to Cuba.  (*Id.* ¶ 10; Kipnis Decl. (Dkt. # 15) ¶ 6, Ex. E (Dkt. # 17-5) (order of removal).)   The United States was unable to effectuate his removal at that time.  (Am. Petition ¶ 2.)  In August 1998, after detaining Petitioner for over six months, the Government released Petitioner under an Order of Supervision ("OSUP").  (*Id.*; Reed Decl. ¶ 11.)

Between 1999 and 2025, Petitioner was incarcerated in California on a sentence of 25 years to life in prison after he was convicted of making a terrorist threat.  (Am. Petition ¶ 3; Reed Decl. ¶ 12.)  Shortly thereafter, the Government issued an Immigration

ORDER - 2

Detainer regarding Petitioner to the California Department of Corrections and Rehabilitation. (Reed Decl. ¶ 13.) On March 7, 2025, the California Parole Board granted Petitioner release on parole provided he had no violations during the following 120 days. (Am. Petition ¶¶ 3, 42.) His projected release date was July 5, 2025. (*Id.* ¶ 42.) On March 17, 2025, ICE learned of Petitioner's possible parole. (Reed Decl. ¶ 14.)

On April 3, 2025, Petitioner's colon exploded while he was incarcerated in California. (Am. Petition ¶ 44.) Petitioner had emergency surgery to repair his colon and, about two weeks later, was discharged back to custody with a colostomy bag. (*Id.* ¶ 45.) In April 2025, Petitioner spoke with an ICE officer for no more than five minutes about coming to the United States from Cuba through the Mariel Boatlift as a minor. (Jimenez-Perez Decl. (Dkt. # 20) ¶ 3; Reed Decl. ¶ 15.) Petitioner was scheduled for surgery to remove his colostomy bag on June 12, 2025. (Am. Petition ¶ 45.)

On June 10, 2025—two days before his scheduled surgery—ICE took Petitioner into custody from the California Correctional Training Facility where he was incarcerated and transported him to NWIPC. (Am. Petition ¶¶ 5, 46; Reed Decl. ¶ 16.) Petitioner spoke briefly with an ICE officer at the NWIPC about his need to have his colostomy bag removed and informed the officer that he feared being sent to Switzerland, where he has no ties, or to Cuba, where he feared he would be imprisoned. (Jimenez-Perez Decl. ¶ 4; Reed Decl. ¶ 16 (stating Petitioner claimed a fear of return to Switzerland and Cuba).) According to Petitioner, the ICE officer told him that he would have his surgery by the end of the month and that Cuba would not accept his return. (Am. Petition ¶ 46;

ORDER - 3

Jimenez-Perez Decl. ¶ 4.)  Petitioner refused the officer's request to sign that he approved third-country removal.  (Jimenez-Perez Decl. ¶ 4.)  On June 19, 2025, ICE issued a Warrant of Removal/Deportation that ordered Petitioner to be taken into custody based on his prior removal order.  (Am. Petition ¶ 7; Reed Decl. ¶ 17.)

In October 2025, Petitioner again spoke with an ICE officer.  (Jimenez-Perez Decl. ¶ 5.)  The ICE officer asked him if he would be willing to be deported to Mexico.  (*Id.*)  Petitioner responded that he did not want to go to Mexico.  (*Id.*)

According to Petitioner, ICE has not provided him justification for his re-detention, nor has it provided evidence that it has obtained travel documents to remove him from the United States.  (Am. Petition. ¶¶ 8-9; Jimenez-Perez Decl. ¶¶ 10-13.)  Petitioner further alleges that he has been detained in unsanitary conditions, that the Government has not appropriately addressed his medical needs during his detention, and that his health has declined since he arrived at NWIPC.  (Am. Petition ¶¶ 8, 10, 47-56.)  For example, Petitioner's colostomy bag still has not yet been removed; he has been relegated to a wheelchair since October 2025; he has lost between 30 and 40 pounds; he has visited St. Joe's Hospital in Tacoma for treatment of acute health issues related to his blood sugar, diabetes, kidney stones, and a hernia; and he has not received refills of needed prescription medications.  (*Id.* ¶¶ 10, 47-56; Jimenez-Perez Decl. ¶ 7.)  Most recently, on or about February 13, 2026, Petitioner went to St. Joe's after feeling sick, dizzy, and fatigued.  (Jimenez-Perez Decl. ¶ 9.)  There, he learned that he had suffered a stroke and was diagnosed with anemia.  (*Id.*)  The Government has not provided Petitioner access to his medical records.  (Jimenez-Perez Decl. ¶ 7.)  Although the

ORDER - 4

Government does not dispute that Petitioner's health has declined (*see generally* Return), it asserts that Petitioner has refused to sign any papers or help obtain travel documents until after he has surgery (Reed Decl. ¶ 18).

Petitioner filed his original petition for writ of habeas corpus *pro se* on December 18, 2025. (*See* Prop. Petition (Dkt. # 1).) After obtaining counsel, he filed an amended petition on January 23, 2026. (Am. Petition.) Petitioner seeks relief including:

> (a) release; (b) an order preventing re-detention unless the government establishes by clear and convincing evidence at a hearing before a neutral decisionmaker that Petitioner is a flight risk or a danger to the community, based on changed circumstances after his most recent release by ICE; (c) an order preventing removal to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings; and (d) an order barring removal to any third country pursuant to [the Government's] punitive removal policy.

(*Id.* ¶ 11.) The petition is now fully briefed and ripe for decision.

## III.    ANALYSIS

To succeed on his habeas petition, Petitioner must show by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). For the reasons set forth below, the court grants Petitioner's petition for writ of habeas corpus.

### A.    Petitioner's Continued Detention is Unlawful

"When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the

ORDER - 5

[noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas*, 533 U.S. at 682. During the 90-day removal period, the government "shall detain" the noncitizen. 8 U.S.C. § 1231(a)(2)(A).  Once the 90-day removal period ends, the Government may continue to detain certain noncitizens, including those, like Petitioner, who are subject to removal due to a criminal offense, or it may release the noncitizen on supervision. *Id.* § 1231(a)(6) ("[A noncitizen] ordered removed who is inadmissible . . . , removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]"); *see also  Zadvydas*, 533 U.S. at 689.

The Immigration and Nationality Act ("INA") does not, however, authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699.  "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause[.]" *Id.* at 690.  Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.  The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

After six months, a petitioner challenging his detention through a habeas petition bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*  Once that showing is made, the Government "must respond with evidence sufficient to rebut that

ORDER - 6

showing." *Id.* "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* The Government's burden to justify continued detention thus becomes increasingly demanding over time. *See id.* If the Government fails to meet its burden, then it must release the noncitizen from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Here, Petitioner asserts that he is entitled to habeas relief under *Zadvydas* because the Government cannot show that there is a significant likelihood that it will be able to remove him to Cuba, Switzerland, or Mexico in the reasonably foreseeable future. The court agrees with Petitioner, and concludes that his continued detention is unlawful. First, Petitioner has been detained for more than eight months since he was placed in ICE custody in June 2025. This period exceeds the presumptively reasonable six-month period under *Zadvydas*. Second, although Petitioner has been subject to a final order of removal since 1998, the Government has failed to remove him in the 27 years that have since elapsed. Third, the Government has provided no evidence that it has in fact obtained travel documents to facilitate his removal from the United States or that any third country would be willing to accept Petitioner into the country. Finally, the Government does not meaningfully dispute that it is unlikely to remove Petitioner from the United States in the foreseeable future. (*See generally* Return; Reed Decl.)

Therefore, the court concludes that Petitioner has met his burden to show that his removal is unlikely to take place in the foreseeable future and, as a result, he is entitled to immediate release from custody. Because the court concludes that release is required

ORDER - 7

under *Zadvydas*, it does not address Petitioner's arguments that his alleged redetention without due process and the Government's alleged denial of adequate medical care separately warrant release.

**B.**    **The *D.V.D.* Class Action Does Not Bar Petitioner's Third-Country Removal Claims**

The Government argues that the court must dismiss Petitioner's third-country removal claims because he is a member of the plaintiff class in *D.V.D. v. Department of Homeland Security*, 778 F. Supp. 3d 355 (D. Mass. 2025). (Return at 8-13.) In that case, the plaintiff class sought and received an injunction barring ICE from removing class members to third countries. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 394 (D. Mass. 2025). The Supreme Court, however, stayed that injunction. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).; *Dep't of Homeland Sec. v. D. V. D.*, 145 S. Ct. 2627, 2629 (2025) (clarifying the Court's prior order). According to the Government, Petitioner "may not circumvent an order of the Supreme Court by seeking the same relief individually here that the Supreme Court denied him as a plaintiff class member in *D.V.D.*" (Return at 11.)

The court disagrees with the Government. This case is similar to *Sanchez v. Bondi*, No. C25-2573KKE, 2026 WL 160882 (W.D. Wash. Jan. 21, 2026), in which a judge of this District concluded that membership in the *D.V.D.* class did not preclude a Cuban national from asserting third-country removal claims. First, "dismissal of individual claims that duplicate a class action is not required, rather, it is within the court's discretion and grounded in its inherent power to control its own docket." *Id.* at *5

(citations and quotation marks omitted).  And second, for the reasons thoroughly explained in *Nguyen v. Scott*, 796 F. Supp. 3d 703, 730-33 (W.D. Wash. 2025), the court rejects the Government's contention that Petitioner's petition should be dismissed because the Supreme Court's stay order in *D.V.D.* is precedential and binding.  *See Nguyen*, 796 F. Supp. 3d at 730-33 (concluding that the Supreme Court's stay order is not precedential because the Court offered no reasoning or detail explaining why it granted the stay); *Sanchez*, 2026 WL 160882 at *5 (compiling cases rejecting the contention that a petitioner's *D.V.D.* class membership bars third-country removal claims).  Thus, the court concludes that Petitioner's membership in the *D.V.D.* class does not prevent the court from adjudicating his claims for individual relief in this habeas action.

### C.      Requests for Injunctive Relief

Petitioner seeks injunctive relief including:  (1) an order preventing his re-detention unless Petitioner violates the conditions of his OSUP or the Government obtains a travel document to Cuba; (2) an order preventing his removal to a third country without notice and a meaningful opportunity to respond; and (3) an order barring his removal to any third country pursuant to the Government's allegedly punitive removal policy.  (Am. Petition at 27.)  The court grants these requests in part.

1.      <u>The Government must comply with federal regulations regarding re-detention of noncitizens</u>

Petitioner seeks an order preventing the Government from re-detaining him absent proof that he violated his OSUP or that the Government obtained travel documents for

ORDER - 9

Cuba.  (Am. Petition at 27.)  The court grants Petitioner's request to the extent he seeks notice and a meaningful opportunity to be heard before he is re-detained.

The re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13.  That regulation states, in relevant part, that the Government may revoke a noncitizen's release and return the noncitizen to custody (1) if the noncitizen violates the conditions of release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen may be removed in the reasonably foreseeable future.  8 C.F.R. § 241.13(i)(1), (2).  The regulation also provides that, "[u]pon revocation [of an OSUP], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to [] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. § 241.13(i)(3).  Accordingly, if the Government seeks to re-detain Petitioner in the future, they must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i).

2.    Petitioner is entitled to notice and a meaningful opportunity to be heard before any attempted third-country removal

If the Government cannot remove a noncitizen to the country specified in the removal order, it may attempt to remove the noncitizen to a third country in compliance with 8 U.S.C. § 1231(b) and the Due Process Clause.  *Sanchez*, 2026 WL 160882, at *6 (citations omitted).  "To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country."  *Id.* (citations

ORDER - 10

omitted). Thus, the court concludes, as have other courts in this District, that if the Government takes steps to remove Petitioner to a country other than Cuba, it "must provide [him] with written notice of [its] intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3)." *Id.* at *7 (citing *Nguyen*, 796 F. Supp. 3d at 727, and *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010-11 (W.D. Wash. 2019)).

       3.     <u>The court denies Petitioner's request for an injunction prohibiting his removal to a third country</u>

Finally, Petitioner seeks an order prohibiting his removal to any third country, arguing that removal to any country other than Cuba constitutes punitive third-country banishment in violation of the Fifth and Eighth Amendments. (*See* Am. Petition at 27.) The Government asserts that Petitioner is not entitled to this relief because he "simply makes unevidenced allegations that the Government is engaging in 'punitive removal practices[.]'" (Return at 16-17.) The court agrees with The Government that, on the record before it, Petitioner's punitive third-country removal claim is speculative and that Petitioner has not demonstrated a likelihood of irreparable injury that would entitle him to a permanent injunction prohibiting the Government from removing him to any third country. *See Sanchez*, 2026 WL 160882 at *6 (so concluding where petitioner "provide[d] no facts specific to his circumstances that support[ed] enjoining Respondents from removing him to any third country, such as identifying a target third country where he might suffer persecution or torture") (internal quotation marks omitted). Therefore,

ORDER - 11

the court denies without prejudice Petitioner's request to enjoin the Government from removing him to a third country in the future.

## IV.    CONCLUSION

(1) Petitioner's amended petition for a writ of habeas corpus (Dkt. # 9) is GRANTED;

(2) The Government SHALL release Petitioner from detention within 24 hours of issuance of this order, under appropriate conditions of release; and

(3) The Government SHALL, within 48 hours if issuance of this order, file a declaration confirming that Petitioner has been released from custody and informing the court of the date and time of his release.

Dated this 17th day of February, 2026.

JAMES L. ROBART
United States District Judge

ORDER - 12